## Earl Alley v. The State.

### No. 6811.   Decided May 31, 1922.

**1.—Murder—Charge of Court—Deadly Weapon.**

Where, upon trial of murder, there was no evidence raising the issue that defendant did not intend to kill the deceased when he struck him, which would call for a charge under Articles 1147, and 1149, C. C. P., there was no error in refusing a requested charge that the knife offered in evidence is not as a matter of law a deadly weapon.

**2.—Same—Burden of Proof—Manslaughter—Charge of Court.**

Where the requested charge in connection with the court's main charge on manslaughter removed any possible ground of complaint there was no reversible error; although the charge should have been given in the usual manner to the effect that if the jury believes beyond a reasonable doubt that accused is guilty of some grade of homicide, but has a reasonable doubt as to whether it is murder or manslaughter, then the benefit of the doubt must be given to the accused, etc.

**3.—Same—Self-Defense—Charge of Court—Reasonable Doubt.**

Where the latter portion of the court's charge on self-defense gave the reasonable doubt in immediate connection with the defensive charge, there was no reversible error, and in view of the entire charge and the requested charge given, appellant has no just ground of complaint.

**4.—Same—Leading Question—Practice in Trial Court.**

While the question upon its face appeared clearly to have been a leading question, but the answer was in the record before objection was made, and was never striken out and was before the jury for all purposes, there was no reversible error.

**5.—Same—Questions and Answers—Bill of Exceptions.**

Where the bill of exceptions consisted of six pages of questions and answers, and a colloquy between counsel and the court, the same will not be reviewed on appeal.   Following Jetty v. State, 90 Texas Crim. Rep., 346, and other cases.

**6.—Same—Argument of Counsel—Practice on Appeal.**

While appellant was on the witness stand it was developed by his own counsel that he had previously broken into a store, and had been sent to the reformatory for two years, and it was urged that the State's attorney's argument on this testimony was reversible error, but where a requested charge was submitted withdrawing same, there was no reversible error.

Appeal from the District Court of Potter.   Tried below before the Honorable Henry S. Bishop.

Appeal from a conviction of murder; penalty, 15 years imprisonment in the penitentiary.

The opinion states the case.

*Stone, Miller & Guleke,* for appellant.—Cited cases in opinion.

*R. G. Storey,* Assistant Attorney General, for the State.

HAWKINS, JUDGE.—Appeal is from a conviction for murder, with punishment assessed at fifteen years in the penitentiary.

At the time of the homicide a carnival or rodeo was in progress in Potter County. Appellant and his brother attended on the night of the trouble. The record would indicate that appellant had been using an intoxicant of some character and was somewhat under its influence. Some time in the early part of the night Messrs. Childers and Ivy, with their wives, were at the rodeo grounds and were run into by appellant. The State's evidence shows that Childers took appellant by the shoulders and pushed him out of the way, whereupon appellant cursed him in the presence of the ladies, using a very vile epithet and was promptly knocked down by Childers; whereupon appellant's brother, appearing to desire to take some part in the matter, was knocked down by Ivy. About the time appellant and his brother got up from the ground an officer appeared on the scene. Appellant was causing some disturbance but told the officer he would "pass the matter up so far as he was concerned" and went away. Deceased, Burns, had nothing to do with the trouble and so far as the record discloses was not even present when it occurred. A few minutes later appellant met a friend of his and was telling him that he and his brother had been assaulted, and his friend was heard to remark "Let's go get the s— b—, they don't make them too big for us." A few minutes thereafter appellant, referring to deceased said, "There is the s— b— now that hit me," and immediately stabbed deceased from which he instantly died. The State's evidence indicates that deceased was struck over the shoulder from the rear, and did not even know of appellant's presence. Appellant's testimony, on the other hand, would indicate that he and his brother were entirely without fault; that someone run against them and knocked them down. Appellant disclaims any knowledge of who it was, but says fearing he would be further assaulted he took out his knife and opened it and was carrying it with the blade up his sleeve; that upon approaching deceased, deceased said, "Here comes this fighting s— b— now," and struck appellant, causing him physical and mental pain, and that he stabbed deceased for this reason, and because he feared deceased would injure him or his brother. As is usually the case the evidence was conflicting as to the circumstances immediately attending the homicide, but as we view the record all the issues raised by the testimony were properly submitted by the court in his charge, and the jury has settled them adversely to appellant.

Complaint is made because the court declined to give the following special charge requested by appellant: "You are instructed that the knife offered in evidence is not as a matter of law a deadly weapon."

We have been unable to discover the necessity for such a charge. Nowhere in the instructions is the term "deadly weapon" used. There is no evidence raising the issue that appellant did not intend to kill deceased when he struck him which would call for a charge under Articles 1147 or 1149 C. C. P. No instruction of any kind was given or requested as to presumptions arising from the use of the knife. The positive testimony given by the physician, who measured the knife blade while on the witness stand, was that the blade itself was three and three-fourths inches long, and measuring to the hilt it would be five inches; that death could be inflicted with it. The evidence further shows that the stab severed the aorta resulting in instant death.

The court charged the jury: "If you find and believe from the evidence *beyond a reasonable doubt* that appellant acting under the immediate influence of sudden passion arising from adequate cause, etc., killed deceased, you will find defendant guilty of manslaughter."

Appellant complains that the charge as framed shifts the burden of proof on the issue of manslaughter from the State to appellant. We realize the difficulty of framing a charge where the issues of murder, manslaughter and self-defense arise. The burden is upon the State to show that defendant is guilty of any grade of homicide. On the other hand, if the elements are present which reduce the offense to manslaughter, to that extent it is as much a defense to the charge of murder as self-defense would be a complete justification. The charge given by the court is very similar to that discussed in Moore v. State, 88 Texas Crim. Rep., 624; 228 S. W. Rep., 218. As was there suggested, the usual manner pursued to protect accused's in his legal rights is by a qualified instruction to the effect that if the jury believes beyond a reasonable doubt that accused is guilty of some grade of homicide but have a reasonable doubt as to whether it is murder or manslaughter then the benefit of the doubt must be given to accused and he can only be found guilty under such circumstances of the lower grade. This instruction was given in the instant case immediately following the charge on manslaughter. In addition thereto we find a special charge requested by appellant and given by the court, the latter part of which is as follows:

"You are instructed that before you can find defendant guilty of murder you must find from legal and competent evidence beyond a reasonable doubt that the defendant, Earl Alley, did not kill the deceased, Henry L. Burns, in self-defense and that defendant did not kill the said Henry L. Burns with adequate cause."

The special charge in connection with the others given remove any possible ground of complaint.

Criticism is also directed at the fourth paragraph of the court's charge where he submits the issue of self-defense, as shifting the burden of proof. After an abstract statement of the law relative to self-defense, the court charged the jury substantially that if they

believed deceased was making or about to make an attack upon appellant, which viewed alone from appellant's standpoint at the time, from its manner and character caused him to have a reasonable expectation of death or serious bodily injury at the hands of deceased and appellant killed deceased under such circumstances they should acquit him, "or if they had a reasonable doubt thereof they should acquit him."

The latter portion of the charge giving the "reasonable doubt" in immediate connection with the defensive charge relieves it of any just criticism. (Section 11, page 5, Branch's Ann. P. C. for collation of authorities.) In addition to the defensive special charge given at appellant's request and quoted in the preceding paragraph of this opinion the court also gave a further special charge as follows:

"You are instructed that before you can convict the defendant, Earl Alley, of either murder or manslaughter you must find and believe from the evidence beyond a reasonable doubt the facts constituting the defendant's plea of self-defense did not exist."

In view of the entire charge, supplemented by the two special charges, appellant has no just ground for complaint.

It appears from one of appellant's bills of exception that he was asked by his counsel while on the witness stand the following question:

"I will get you to state whether you would have struck the deceased, Burns, if you had not been in fear of serious bodily injury or your life."

Appellant answered: "I would not."

After the answer was in the State objected to the question as being leading and suggestive, which objection was sustained by the court. In explaining the bill the learned trial judge says he does not recall that before this time appellant had made any statement as to whether he would have struck deceased if he had not been in fear of serious bodily injury or death, and therefore sustained it as leading. We think it immaterial whether the court was right or wrong in his ruling. The question upon its face appears clearly to have been a leading question, but the answer was in the record before objection was made, and was never stricken out, so was before the jury for all purposes. We find from an inspection of the statement of facts where appellant testified that his reason for stabbing the deceased was because he feared he would hurt either himself or his younger brother. The bill of exception as it appears in the record presents no error.

Bill of exception number 44, discussed by appellant in his brief, is not in condition to receive consideration at our hands. It consists of six pages of questions and answers and a colloquy between counsel and the court. We have held in many cases that such a bill is not in proper form. Carter v. State, 90 Texas Crim. Rep., 248, 234 S. W. Rep., 535; Jetty v. State, 90 Texas Crim. Rep., 346, 235 S. W. Rep., 589; Rylee v. State, 90 Texas Crim. Rep., 482, 236 S. W. Rep., 744; McDaniel

v. State, 90 Texas Crim. Rep., 636, 237 S. W. Rep., 292; Watson v. State, 90 Texas Crim. Rep., 576, 237 S. W. Rep., 298; Parker v. State, 91 Texas Crim. Rep., 68, 238 S. W. Rep., 943.

While appellant was on the witness stand it was developed by his own counsel that he had previously broken into a store and had been sent to the reformatory for two years. It is urged by brief that the State's attorney committed a reversible error in having argued to the jury that appellant had been guilty of a felony in burglarizing the store. We have searched the record in vain for any bill reserving exception to such argument, but we find a special charge given at appellant's request as follows:

"You are instructed that you will not consider the argument of the State's attorney that defendant, Earl Alley, had been guilty of a felony in burglarizing the store and being sent to the reformatory because under the law the defendant, Earl Alley was not guilty of a felony."

We are not apprised in what connection such argument was used. We are of opinion the argument was not of such character, in view of the evidence developed by appellant himself, but that the special charge given at his request would have corrected any error which might have been committed by the district attorney.

We have examined all other questions presented in appellant's brief. Several of the bills of exception discussed therein can not be considered because in question and answer form. The other matters taken in connection with the explanation of the learned trial judge on the bills of exception present no errors which we think call for a discussion at our hands.

Having found no error which would call for a reversal, the judgment of the trial court is affirmed.

*Affirmed.*